UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | No. 4:21-CR00159 MTS |
| | ) | |
| DONOVAN WALKER, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SENTENCING MEMORANDUM AND
REQUEST FOR VARIANCE

Comes now the defendant, Donovan Walker, by and through Counsel William J. Ekiss, and herein files with this Court the following sentencing memorandum and request for variance. In support of this request the defendant states the following:

On January 21, 2022, the defendant pled guilty to a one-count Superseding Information charging him with Possession of Child Pornography in violation of 18 U.S.C. Section 2252A(a)(5)(B) and 18 U.S.C. Section 2252A(a)(2).  The matter is presently set for sentencing, in person, on June 28, 2022.

Consistent with the written plea agreement, the parties agreed that the defendant may request a sentence below the applicable guideline range pursuant to any chapter of the Sentencing Guidelines or pursuant to 18, U.S.C. Section 3553(a).  Furthermore, the probation office has identified factors under 18 U.S.C. Section 3553(a) that may warrant a variance and imposition of a non-guideline sentence based upon the history and characteristics of the defendant.   Specifically on page 15, paragraph 90, the probation office outlines information which may be consider by the court for a variance, specifically, (based upon the history and characteristics of the defendant, and that the defendant has no criminal history and this would be

1

his first period of incarceration).

## I.   Law and Argument

### A. General 18 U.S.C. § 3553(a) Considerations in Support of Defendant's Sentencing Request

The Sentencing Guidelines do not necessarily encompass all variations of criminal history such that this Court is no longer mandated to rely on mere numbers in determining the appropriate Guidelines range and may delve into a more-reasoned and flexible approach to sentencing. *See generally, United States v. Booker,* 543 U.S. 220 (2005); *Gall v. United States,* 552 US 38 (2007).   Consistent with *Booker* and *Gall,* the same legal philosophy underlying sentencing in the federal forum as articulated in *Kimbrough v. United States* applies in this matter.   First, that the Guidelines are but one factor this Court must consider.   *See Kimbrough v. United States*, 128 S.Ct. 558, 564 (2007).   Second, they deserve no greater weight than any other factor and may not be presumed reasonable by this Court. *Id.; see also*, *United States v. Rita,* 127 S.Ct. 2456, 2465 (2007).   This has become even more evident with recent Supreme Court decisions regarding the presumptive reasonableness of the Guidelines. *Spears v. United States*, 555 U.S. 3, 8 (2009).

18 U.S.C. § 3553(a) also provides that this Court is to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing listed in §3553(a)(2), namely reflecting the seriousness of the offense, promoting respect for the law, providing punishment for the offense, deterring criminal conduct, protecting the public from future criminal conduct by the defendant, and providing the defendant with needed educational or vocational training or medical care. Section 3553(a) also requires the sentencing court to consider the nature and circumstances of the offense, the Guidelines

2

range, and the need to avoid unwarranted sentence disparities.

Individualized assessment of all relevant sentencing factors in this case suggest that a sentence of probation is appropriate. Such a variance is squarely aligned with the objectives and associated points of consideration as set forth in 18 U.S.C. § 3553(a) where this Court is to impose a sentence that corresponds with a particular offender's crime and background and further satisfies certain prescribed goals of protecting the public, promoting respect for the law, and providing just punishment for the offense(s). *See generally*, 18 U.S.C. § 3553(a) (2). In determining the appropriate sentence and finding a variance, this Court must consider the following:

(1) nature and circumstances of the offense and the history and characteristics of the defendant;

(2) need for the sentence imposed to accomplish each of the purposes of sentencing listed in §3553(a)(2);

(3) kinds of sentences available to the Court;

(4) the Sentencing Guidelines;

(5) relevant policy statements issued by the Sentencing Commission;

(6) need to avoid unwarranted sentencing disparities among similarly situated defendants; and

(7) need to provide restitution to the victims.

*See* 18 U.S.C. § 3553(a).

18 U.S.C. § 3661 precludes courts from placing limits on the information they receive "…concerning the background, character of a person convicted of an offense…" As is evident from the text of §3553(a) (4), the Guidelines are only *one* factor (and not even the first) that must be considered by a sentencing court. *See e.g.* <u>United States v. Young</u>, 689 F.3d 941,944 (8th Cir. 2012). By reiteration, sentencing courts may no longer consider

3

the Guidelines range as mandatory and are now required to consider and evaluate *all* of the factors listed in §3553(a) when fashioning a sentence.

Preliminarily, it is critical that this Court recognize that the PSR does not apply the rule(s) in *Booker* and its progeny to each of the seven enumerated statutory factors, but merely computes a Guidelines range absent any identifiable bases from which to consider a departure and/or variance. The PSR fails to identify application to any of the factors contained in §3553(a) despite *Booker's* implications regarding failure to first find from the facts whether a lesser punishment would be sufficient to accomplish defined sentencing objectives. More simply, a sentence which is "minimally sufficient" must be selected and imposed. Hence, the reason §3553(a) factors as interpreted in a light consistent with *Booker* become all the more critical to this Court's overall sentencing determination. Here, Scott's situation presents a legally sufficient basis from which this Court may consider the requested variance.

While it is well settled that this Court must still accurately calculate the applicable Guidelines range and use same as the starting point or benchmark from which to impose sentencing, *Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *Id.* at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v United States*, 552 U.S. 85, 90 (2007). This Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," *id.* at 49-50, and explain how the facts relate to the purposes of sentencing. *Id.* at 53-60; *Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than

4

necessary' to accomplish the goals of sentencing." *Id*. at 101; *Pepper*, 131 S. Ct. at 1242-43.

A critical element of the Supreme Court's analysis was designed to ensure that the Guidelines remain truly advisory, such that authority of the sentencing court to disagree with a certain Guideline becomes a matter of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007) (district courts may find that the "Guideline sentence itself fails to properly reflect § 3553(a) considerations"). As iterated in *Kimbrough* for example, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 552 U.S. at 91, 109-10.

Congressionally directed Guidelines are just as advisory as any other Guideline and therefore equally subject to policy-based variances. In *Vazquez v. United States*, 130 S. Ct. 1135 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." U.S. Br. at 11, *Vazquez v. United States*, No. 09-5370 (Nov. 2009). As the Eighth Circuit has repeatedly acknowledged, all Guidelines are advisory. *United States v. Meirick*, 674 F.3d 802 (8th Cir. 2012).

5

## B. Requested Sentence

Donovan requests this Court impose a sentence that takes into consideration the nature and circumstances of the offense; the history and characteristics of Donovan; and just punishment as suited for an offense under the facts set forth herein.   According to the presentence report the advisory Guideline range, for a first time offender with a criminal history category of one, with one video is 262 months to 327 months in prison. That seems to be the norm in a child pornography case, which is under debate in virtually every federal district concerning any and all USSG enhancements associated with 2G2.1 or 2G2.2.   Counsel for the defendant argues that Donovan's guideline range is 135 months to 168 months.   However, neither the presentence report nor counsel's arguments relative to the USSG range matter because the maximum range of punishment by statute is 10 years or 120 months.

There is a lot of dispute among the Districts in applying enhancements, and granting a variance in child pornography sentences.   This has been declared a very delicate under taking.   An ordinary first time offender is likely to qualify for a sentence of at least 168 months to 210 months, which is either under the 20 year maximum or substantially exceeding the 10 year maximum, primarily based solely on sentencing enhancements that are all but inherent to the crime of possession or distribution of child pornography.   Consequently, adherence to the guideline results renders virtually no distinction between the sentences for defendants like Donovan and the sentences for the most dangerous offenders who, for example, distribute child pornography for financial gain, who entice minors to participate in sexual contact or intercourse and who fall in higher criminal history categories.   This result is fundamentally incompatible with the

6

factors set forth in Section 3553(a).  By concentrating all offenders at or near the statutory maximums, Section 2G.2 of the USSG, weakens, damages or even destroys the fundamental statutory requirement found in Section 3553(a) that directs the District Courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant".  Moreover, it violates the principle set forth and reinforced in *Gall v. United States*, 552 U.S. at 55, 128 S.Ct. 586 (2007), that courts must guard against unwarranted similarities among sentences of defendants who have been found guilty of dissimilar conduct.

As the Supreme Court recognized and made clear in *Gall*, the amount by which a sentence deviates from the applicable guideline range is not measured by how reasonable a sentence is.  Reasonableness is determined instead by the District Court's individualized application of the statutory sentencing factors.  *Gall* at 46-47.  Procedural and substantive errors are compounded by the facts that district courts are working with a guideline that is fundamentally different from most unless applied with great care.  Sentencing guidelines are typically developed by the sentencing commission using an empirical approach based on data about past sentencing practices.  *Rita v United Sates*, 551 U.S. 338, 349, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007).  However, the commission did not use the empirical approach in formulating the child pornography guidelines, under 2G.2, instead, at the direction of Congress, the sentencing commission has amended the guidelines several times since their introduction in 1987, each time recommending harsher sentences.  See United States Sentencing Commission, *The History of the Child Pornography Guidelines*, Oct. 2009, at

http://www.ussc.gov/general/20091030_history_Child_Pornography_Guidelines.pdf

(last visited April 19, 2010).

Former United States Attorney for the Eastern District of New York, Alan Vinegrad, has noted, that the recent changes effected by the PROTECT Act of 2003 evince a 'blatant' disregard for the Commission and are 'the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress," as Congress has: (i) adopted sentencing reforms without consulting the Commission, (ii) ignored the statutorily prescribed process for creating guideline amendments, (iii) amended the guidelines directly through legislation, (iv) required that sentencing data be furnished directly to Congress rather than to the Commission, (v) directed the Commission to reduce frequency of downward departures regardless of the Commission's view of the necessity of such a measure, and (vi) prohibited the Commission from promulgating any new downward departure guidelines for the next two years.  United States v. Dorvee, 616 F.3d 174, 184-185, (2nd Cir. 2010), quoting, Alan Vinegrad, *The New Federal Sentencing Law*, 15 Fed. Sent. R. 310, 315 (June 2003).   The Commission has often openly opposed these Congressionally directed changes.  Dorvee at 185.

Therefore, the defendant is requesting a sentence of 60 months, based upon the factors under Section 3553 (a) and the sentencing commissions position concerning congressional oversight that medleys in the Commissions ability to render guidelines consistent with the language of the commissions inception, for fairness and parity.

### C. Mitigating Factors for a Variance Under § 3553(a)

#### 1. *Nature and circumstances of the offense*

As set forth in the plea agreement, the PSR and the police reports, the victim

8

solicited men on a dating web site called "Tinder". Tinder is a dating web site for adults 18 years of age and older. M.A. has openly admitted that she lied about her age, along with 3 other minor girlfriends, in order gain access to the dating web site and set up their profiles. As the police reports state, M.A. and her friends (all minors), learned of the dating web site called "Tinder". The dating application was downloaded onto M.A.'s phone. According to M.A., and other girls involved, the girls began having sex with adult men they met on Tinder. The girls would come to one of the minor's house to spend the night, they would then sneak out of the house to meet the men they met on "Tinder". M.A. lived with her grandmother, and would also sneak out of her house late at night to be with the men she met on tinder. The reports further reflect that M.A. had sexual contact and intercourse with other adult men prior to meeting the defendant on the dating web site. Moreover, consistent with the police reports, M.A. admitted to the police that she lied about her age advising the defendant that she was 18 years of age at the time they met. According to one of the other girls, they had all agreed to get on tinder so that they could find drugs. It became more than that. In fact, one of the girls stated to police that M.A. and another girlfriend stayed with two adult men in Jefferson County for two (2) days. While the defendant is older than the victim, and frankly should have known better, M.A. was having sexual intercourse, (vaginal, anal and oral) with other adult men she had met on tinder. According to the police reports, M.A. had sexually been with at least two other adult males that she met on tinder, a couple months prior to meeting the defendant on tinder. M.A. consented to having sex with each and every one of the men she met on tinder. One can only assume based upon her admittance that she lied about her age to get on tinder, and then when confronted by the

9

police she again lied about her real age, that she also lied to the other men she met on tinder as well.

Here the defendant, Donovan Walker, video recorded himself having sex with M.A., on his cell phone. There has been no evidence set forth within the police reports, the plea agreement or the presentence report that such was done without the knowledge and consent of M.A. As we know, M.A. consented to having sex with the defendant, and others she met on tinder, despite her age. While this does not excuse the defendant's actions, the circumstances of this case are not the run of the mill possession of child pornography case. The video was never sent, shared or downloaded to anyone on any social media site. Moreover, Donovan cooperated with law enforcement, providing them with the password to his phone so that the police could gain access to his phone information.

There is absolutely no evidence of force, threats, intimidation, coercion or enticement of M.A. This case did not involve distribution, and only involved one video depicting the defendant and M.A. having sexual intercourse. There was no planning involved and the relationship, although illegal due to M.A's age, was a consenting relationship that developed from a legal dating web site for adults.

Despite M.A. consenting to having sexual intercourse with the defendant, that does not change the fact that Donovan's conduct is wrong and in violation of the law. The Courts have dealt with similar type cases in the past, wherein the defendant is an adult male and the victim is an underage female who has consented to have sexual intercourse with the defendant. (See *United States v. Sherwood*, 850 F.3d. 391 (8th Cir. 2017), wherein the defendant invited high school classmates to his home for a party

10

where everyone was drinking alcohol. Sherwood took the victim upstairs to his room and began having sex with her. The victim had become so drunk that she could not refuse to participate. Sherwood continued the sexual activity for more than an hour, filming the sexual activity and assault. The video showed Sherwood laughing as he continued to engage in sexual activity with a victim who was unable to hold herself in a seated position or speak clearly. After the assault, Sherwood went to work and his friends carried the victim, dressed in Sherwood's clothing, to a public park bench where they left her, still severely intoxicated. The Court granted defendant's request for a variance, because of his youth, his status as a first time offender and the fact that his guardians had relocated to assist with the defendant's rehabilitation, giving the defendant Sherwood 60 months in the BOP; *United States v Rouse*, 936 F.3d. 849 (8th Cir. 2019), in this case the defendant Rouse (37 years old) had been engaged in a sexual relationship with B.A. a 16 year old girl. The two had met in Omaha to have sexual intercourse. During the relationship the defendant suggested that they record their sexual activity, and B.A. agreed. The defendant used his cell phone to video the pair engaged in sexual acts. The defendant then sent the videos to B.A. over the internet but did not distribute them to anyone else. The grand jury indicted the defendant on 2 federal charges, arising from the video, (1) enticement of a minor to engage in sexual contact and (2) distribution of child pornography. The government agreed to dismiss the charge of enticement, in exchange for the defendant's plea of guilty to distribution of child pornography. The defendant, Rouse, entered a conditional plea of guilty thereby preserving his right to appeal his conviction on the grounds of the first amendment. Upon argument by defendant's counsel, the court granted the defendant a variance and sentenced the

defendant to 96 months in BOP; *United States v. Beiermann*, 599 F.Supp.2d 1087, 1116, 1117 (N.D. Iowa 2009), in this case the defendant was charged with knowingly transporting and shipped in interstate commerce, visual depictions of minors engaged in sexual explicit conduct, receipt of child pornography and possession of child pornography. Upon execution of a search warrant at defendant's residence more than 2600 images and 25 videos of child pornography were found on the defendant's computer, which had been transmitted via internet newsgroups, file sharing, websites and electronic mail. The defendant's criminal history category was one, and range of punishment was 210 to 262 months. The statutory range of punishment was a minimum of 5 years to a maximum of 20 years. Counsel for the defendant filed a motion for variance. Pursuant to the factors set forth in Section 3553 (a), the Court granted defendant's variance and sentenced him to 90 months. The Court in *Beiermann* further cited less culpable and dissimilar defendants, who did not engage in the distribution of child pornography, citing *United States v Baird*, 580 F.Supp.2d at889, 895, defendant sentenced to 2 years for one count of possession of child pornography; *United States v. Grinbergs*, 2008 WL 4191145, defendant sentenced to 12 months and a day for possession of child pornography; *United States v. Gellatly*, 2009 WL 35166, defendant sentenced to 60 months for receipt of or distribution of child pornography.); *United States v Abraham*, 944 F.Supp. 2d 723 (D. Neb. 2013), the defendant plead guilty to one count of receipt and distribution of child pornography. The advisory sentencing guidelines range were not in dispute. Defendant's sentencing guideline range was 210 to 240 months in prison. The defendant filed a motion for variance. The Court held that the defendant has no significant criminal history, there is no indication in the record

of abuse of his own or other children, no prior history of sexual offenses and no prior offenses that might be seen as precursors to a more serious sexual offenses.   As such, the Court granted the defendant's request for variance and sentenced the defendant to 72 months.)

**2. *The history and characteristics of the defendant;***
***the Sentence Requested Is Sufficient But Not Greater Than Necessary to Satisfy the Purposes of Sentencing*.**

Donovan Walker was born April 20, 1995.   Donovan graduated from Francis Howell High School, and received an athletic scholarship to play football at Emporia State University.   In college Donovan studied management information systems.   Donovan was the captain of his college football team for three years.   Upon leaving college he became employed and remained employed up to the time of his arrest in this case.   Donovan is a lifelong resident of the St. Louis metropolitan area residing in St. Peters, Missouri.   Donovan's mother describes him as a quiet and reserved child who was heavily involved in church; and very charity minded.   His mother and father are good Christian people, and his mother is a school teacher at Cross Keys Middle School.   The health of the family and Donovan is good, with the exception of his father, Michael Walker.   Michael underwent a kidney transplant about 2 years ago, and both of his parents are diabetics.

Donovan had an addiction to marijuana, but last smoked pot in May 2020.   The defendant has no criminal history and scored a zero in the criminal history computation.   He has never served time in jail or been convicted of a crime.

According to conversations with the defendant, he has been fast to understand the wrongfulness of his conduct and his destructive habits and behavior.   He identifies those as smoking marijuana and consuming alcohol.

Consideration of all factors warrant the imposition of the requested sentence.  In enacting the Sentencing Reform Act, Congress did "not favor one purpose of sentencing over another," except that rehabilitation was not to be a reason to impose a sentence of incarceration. *See* S. Rep. No. 98-225, at 67 (1983). Rather, "each of the four stated purposes should be considered in imposing sentence in a particular case," and "one purpose of sentencing may have more bearing on the imposition of sentence in a particular case than another purpose has." *Id*. at 68. In choosing what kind of sentence to impose, the court "must consider" all of the purposes and factors set forth in § 3553(a). *Id*. at 119.

While child pornography must be dealt with and is absolutely unacceptable, there has been much debate on how to apply the sentencing guidelines and its enhancements in such cases.  The guideline impermissibly and illogically skews sentences for even average defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct or degree of culpability.  This is largely because the enhancements, some quite extreme, are based on circumstances that appear in nearly every child pornography case; using the internet, amassing large volumes of images, the presence of video clips, counted as 75 images for each clip, the presence of prepubescent minors and violence.  The child pornography guidelines make it difficult if not impossible to distinguish between the least offenders and the worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment.  In <u>United States v. Dorvee</u>, 616 F.3d 174, 187, (2nd Cir. 2010), the Court makes a very interesting analogy which really hits home on how skewed the child pornography offense levels and ranges of punishment are.  The Court stated, "A defendant convicted under 18 U.S.C. Section 2252A(a)(5) of possessing on his computer two non-violent videos of

seventeen year olds engaged in consensual sexual conduct qualifies for a base offense level of 18 under Section 2G2.2(a)(1), a two level enhancement for the use of a computer under Section 2G2.2(b)(6), and a three level enhancement for number of images under Section 2G2.2(b)(7)(B). Even with no criminal history, this defendant's total offense level is 23 with a guideline sentence of 46 to 57 months. In comparison, this is the same guidelines sentence as that for an individual with prior criminal convictions placing him in a criminal history category of II, who has been convicted of an aggravated assault with a firearm that resulted in bodily injury." *Id* at 187. In short, the harshness of the sentencing guidelines pursuant to U.S.S.G. Section 2G2.2 for child pornographers, whatever their criminal conduct, criminal histories or personal characteristics, reflect a "put them down the oubliette" mentality **that has nothing to do with imposing a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing**. These flaws mean that this guideline is not only entitled to little deference, but that the court is entitled to reject it entirely. *Beiermann*, 599 F.Supp.2d 1087, 1106 (N.D. Iowa 2009); citing *United States v Spears*, 129 S.Ct. 840, 842-43, 172 L.Ed.2d 596 (2009), a guideline may be rejected on categorical, policy grounds, even in a "mine-run" case, and not simply based on an individualized determination that it yields an excessive sentence in a particular case.

### 3. *Punishment and Deterrence, 18 U.S.C. § 3553(a)(2)(B)*

The requested sentence of 60 months, bears a more logical nexus to the charge at issue; combined with the nature and circumstances surrounding the facts of this case and the history and characteristics of the Donovan. Such a variance request is appropriate for a person of Donovan's background, but moreover, with the principles set forth in *Booker* and *Kimbrough*. To that end, empirical evidence is unanimous in that there

15

exists no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28- 29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, reached that conclusion, as has every major survey of the evidence."); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re- arrested at similar rates over a four-year time frame"). Based on this much defined research, and the lack of empirical data in the formulation of the child pornography sentencing guidelines, as set forth herein, any argument suggesting and implying that deterrence comes from imprisonment fails and instead supports Donovan Walker's argument and motion for variance.

## II.  Conclusion

Valid reasons exist within this Circuit, why Donovan Walker should receive a variance from the sentence set forth under the sentencing guidelines and the statutory maximum of 10

16

years. The reasons noted herein for such a variance fall within the factors set forth under Section 3553 (a), and the variety of case law set forth herein. This is not a typical child pornography case with thousands of images, videos and file sharing. It does not include enticement or manipulation of a minor to perform a sex act or to have sexual contact. This case involves a minor who lied about her age, along with 3 other girlfriends, so that they could enroll in an online adult dating website to troll for older men to get drugs. It evolved into having sex with men to get drugs, and M.A. was far more advanced in her sexual advancements, experimentations and desires than anyone of us want to believe. The sentencing guidelines, because of the defects in the child pornography sentencing guidelines and enhancements, has no impact here, because as in most child pornography cases, the range of punishment exceeds the statutory maximum sentence allowed by law. As such, the factors set forth in Section 3553 (a) are extremely critical, especially the manner in which they are viewed and applied by the Court in its determination of Donovan's sentence, as well as the purpose from which to impose a rational and reasonable sentence based upon the nature and circumstances of the case, as well as the history and characteristics of the defendant. A variance under such circumstances would clearly serve the ends of justice, and prove sufficient to meet the factors and purposes set forth in 18 U.S.C. Section 3553 (a), while at the same time, would not be greater than that necessary to punish Donovan Walker for his poor judgment.

      Counsel respectfully requests that this Honorable Court grant defendant's request and sentence the defendant to 60 months.

Respectfully Submitted,

THE LAMPIN LAW FIRM

/s/ William J. Ekiss
William J. Ekiss #47389
5770 Mexico Rd., Ste. A
St. Peters, MO 63376
(636) 317-6331
billekiss@lampinlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2022, the foregoing was electronically filed with the Clerk of the Court, Counsel to serve by email a copy hereof this date to Ms. Jillian Anderson, Assistant U.S. Attorney.

/s/ William J. Ekiss
William J. Ekiss #47389
5770 Mexico Rd., Ste. A
St. Peters, MO 63376
(636) 317-6331
billekiss@lampinlaw.com